IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

YEFRI ROLANDO CASTELLANOS
SEVILLA,

Defendant.

Case No. 1:26-MJ-111

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Andrew Mugavero, being duly sworn, depose and state:

1.      I am an Investigator with the United States Park Police ("USPP") in Washington, D.C. I have been employed with USPP since February 2019. During that time, I received specialized training and conducted numerous investigations relating to violations of the Code of Federal Regulations and the Code of the District of Columbia (D.C. Code).  In March 2024, I was promoted to Master Patrol Officer, where I supervised other officers in the absence of a sergeant and was responsible for field training new officers.

2.      In June 2025, I was promoted to Investigator, Criminal Investigations Branch, Major Crimes.  I completed the Department of Interior Investigator Training Program at the Federal Law Enforcement Training Center, as well as specialized training relating to the Criminal Investigator position.  My duties as a USPP Investigator include threat investigations; investigating major criminal violations of the D.C. Code, the Code of Federal Regulations, and Title 18 of the U.S. Code; and seeking, when applicable, prosecution of violators.

1

3.    As an Investigator for USPP, I am authorized to investigate violations of laws of the United States. I am also a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.    This affidavit is submitted in support of a criminal complaint charging the defendant, YEFRI ROLANDO CASTELLANOS SEVILLA ("CASTELLANOS"), an alien from Honduras, under Title 18, United States Code, Section 2244(b); and Title 18, United States Code, Section 1546(a).

5.    The facts and information contained in this affidavit are based upon my training and experience, personal knowledge, and observations during this investigation, as well as the observations of other agents and law enforcement officers involved in this investigation. This affidavit contains information necessary to support probable cause, but it is not intended to include every fact and matter observed by me or known to the United States.

## STATUTES CHARGED

6.    Title 18 of the U.S. Code, Section 2244(b) states, in part, "Whoever, in the special maritime and territorial jurisdiction of the United States … knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both." Title 18 of the U.S. Code, Section 2246(3) states, "the term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

7.    Title 18 of the U.S. Code, Section 1546(a) states, in part, "Whoever knowingly … utters, uses, attempts to use, possesses, obtains, accepts, or receives any [immigrant or nonimmigrant] visa, permit, border crossing card, alien registration receipt card, or other

2

document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; … Shall be fined under this title or imprisoned not more than … 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), … or both."

**SUMMARY OF FACTS TO SUPPORT PROBABLE CAUSE**

8.      On April 13, 2026, at approximately 1444 hours, USPP Communications received a 911 call in reference to a sexual assault that reportedly occurred on the Mount Vernon Trail, which is a running and biking trail that runs parallel to the George Washington Memorial Parkway (the "Parkway") and is located within the special maritime and territorial jurisdiction of the United States, and in the Eastern District of Virginia.  USPP Communications advised that officers should be on the lookout for three Hispanic males, dressed in all black, and riding scooters. Investigator Maxwell (another USPP Criminal Investigator) and I were already located at Gravelly Point in an undercover vehicle.  The Mount Vernon Trail runs through Gravelly Point.  After we received the message from USPP Communications, Inv. Maxell advised me that he had observed three Hispanic males in all black traveling southbound on scooters through Gravelly Point along the Mount Vernon Trail just prior to USPP Communications relaying the call.

9.      Inv. Maxwell and I began to canvass southbound along the Mount Vernon Trail.  I then observed three Hispanic males in all black traveling southbound on the Mount Vernon Trail in the area of Four Mile Run adjacent to Reagan National Airport.  Inv. Maxwell and I made a U-turn and traveled northbound on the Parkway so that we could maintain a visual of the three

3

individuals who matched the description provided by USPP Communications.  Inv. Maxwell and I were able to relocate the three Hispanic males traveling northbound on foot along the Mount Vernon Trail adjacent to Thomas Avenue.  Inv. Mugavero and I parked our vehicle on the shoulder of Parkway and maintained visual on the three subjects until USPP officers in marked and unmarked cruisers stopped the three Hispanic males.  The three males were later determined to be CASTELLANOS, Hugo Paul Alexander Diaz Martinez ("Diaz"), and a juvenile.

10.    Once the three males were detained, Inv. Maxwell and I met with the victim (hereinafter, "V1").  V1 stated that she had entered the Mount Vernon Trail and was near the tunnel when she observed three possibly Latino males with dark short curly hair, wearing all black clothing.  V1 stated that she believed the shirts were possibly black long-sleeve zip-ups.  V1 stated that they appeared young, possibly juveniles.  V1 stated that, as she was walking, one of the three individuals, later identified as CASTELLANOS, began speaking to her and trying to engage in conversation with her.  He spoke in accented English, so she was only able to make out some of the things he said.  She rebuffed his advances, telling him that she was married, and she continued on her walk.

11.    V1 stated that she walked southbound on the trail as the three males went northbound.  V1 stated that the three males were riding green electric scooters.

12.    After approximately 10 minutes of walking, V1 observed a scooter pass her.  V1 then felt what she believed was a very hard slap on her left buttock as a second scooter passed her.  V1 recognized the subjects on those two scooters to be the males she had encountered earlier.

13.    Inv. Maxwell and I conducted a show-up with V1 of CASTELLANOS, Diaz, and the juvenile.  V1 positively identified CASTELLANOS as the person that had been attempting to

4

speak with her earlier. V1 was unable to identify if CASTELLANOS was the subject who had made contact with her buttock or if it was Diaz or the juvenile.

14.    Inv. Maxwell, Officer Guerrero, and I conducted an interview with CASTELLANOS. Officer Guerrero translated the interview into Spanish because CASTELLANOS is not fluent in English. After being advised of the Miranda Warnings, CASTELLANOS agreed to speak with officers. CASTELLANOS stated that he was on the trail and had been near the tunnel. CASTELLANOS initially denied speaking with women on the trail. When confronted with the fact that a victim had provided a statement about having their butt slapped, CASTELLANOS admitted that he had touched the woman but claimed that it was by accident. When confronted that her butt was slapped really hard, CASTELLANOS then admitted he did hit her in the butt, CASTELLANOS did not think it was hard, but it was a "mistake." When asked to explain what he meant by "mistake," CASTELLANOS stated that he was just being dumb and that he was sorry. CASTELLANOS stated that he does not know why he did it. CASTELLANOS admitted that touching her butt was not an accident and that he wanted to do it. CASTELLANOS stated that he was on the scooter and believed he passed V1 on her left side when he slapped her butt.

15.    Inv. Maxwell and I then interviewed Diaz. Diaz stated that he was riding the same scooter as the juvenile. Diaz stated that CASTELLANOS was riding a scooter behind him. Diaz stated that, after he passed V1, he heard a loud sound consistent with a slap, immediately followed by a woman screaming. Diaz stated that CASTELLANOS did not say anything after the slap, and that he was laughing. Diaz stated they continued to ride their scooters southbound after the incident.

5

16.     During a search incident to arrest, a purported ID card labeled "United States of America Permanent Resident" with the name "Yefri Rolando Castellanos Cevilla" and a date of birth of June 12, 2005, was recovered from CASTELLANOS's person.  The card also had CASTELLANOS's picture on it.  A review of the card revealed that it was counterfeit, meaning that it was not issued by any government agency, but it was made to look like a legitimate permanent resident card that would be issued by a government agency.  A search of DHS databases revealed that the USCIS# 079-206-315 listed on the card that was in the possession of CASTELLANOS belonged to a different individual.

17.     During the interview with law enforcement, CASTELLANOS reported that his second surname starts with an "S," not a "C," and that his true date of birth is June 12, 2007, not 2005.  A search of DHS databases revealed that a person with CASTELLANOS's true name spelling and true date of birth was encountered by U.S. Border Patrol crossing the U.S.-Mexico border on or about July 16, 2023, near El Paso, Texas.  At that time, Border Patrol captured the fingerprints of that person.  Those fingerprints matched the fingerprints captured from CASTELLANOS by USPP following the incident on April 13, 2026.

18.     During the interview with law enforcement, CASTELLANOS admitted that he entered the United States unlawfully in 2023.  CASTELLANOS stated that he bought the U.S. Permanent Resident Card for $100 from a man named Fermin that he worked with at a restaurant located in Alexandria, Virginia.

## CONCLUSION

19.     I respectfully submit that the foregoing facts in this affidavit demonstrate probable cause to believe that, on or about April 13, 2026, within the special maritime and territorial

jurisdiction of the United States, in the Eastern District of Virginia, CASTELLANOS violated 18

U.S.C. § 2244(b) and 18 U.S.C. § 1546(a).

Respectfully submitted,

_Andrew Mugavero_

Andrew Mugavero
Investigator
U.S. Park Police

Respectfully submitted and attested to in
accordance with the requirements of Fed. R.
Crim. P. 4.1 by telephone on April 14, 2026.

Digitally signed by Ivan Davis
Date: 2026.04.14 13:45:59 -04'00'

The Honorable Ivan D. Davis
United States Magistrate Judge

Alexandria, Virginia